**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| KATHLEEN KUTZ, | ) | No. ED CV 12-1794-PLA |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 23, 2012, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on November 5, 2012, and December 4, 2012. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 17, 2013, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 24, 1959.  [Administrative Record ("AR") at 63.]  She completed one year of college [AR at 140], and has past relevant work experience as a substance abuse prevention specialist and a youth advocate.  [AR at 136, 150-57.]

On February 4, 2009, plaintiff filed an application for Supplemental Security Income payments, alleging that she has been unable to work since January 29, 2009, due to cirrhosis of the liver, chronic obstructive pulmonary disease, and hepatitis C.  [AR at 63-64, 122-26, 134-41.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 65-79.]  A hearing was held on July 28, 2010, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 47-60.]  On September 22, 2010, the ALJ determined that plaintiff was not disabled.  [AR at 33-38.]  On August 20, 2012, the Appeals Council granted plaintiff's request for review, but then affirmed the ALJ's conclusion that plaintiff was not disabled.  [AR at 6-12, 28.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering both adverse and supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

1   1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must

2   defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d

3   1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

4

5                                              **IV.**

6                              **THE EVALUATION OF DISABILITY**

7           Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

8   to engage in any substantial gainful activity owing to a physical or mental impairment that is

9   expected to result in death or which has lasted, or is expected to last, for a continuous period of

10  at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

11

12  **A.      THE FIVE-STEP EVALUATION PROCESS**

13          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

14  whether a claimant is disabled.  20 C.F.R. § 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th

15  Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether

16  the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled

17  and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity,

18  the second step requires the Commissioner to determine whether the claimant has a "severe"

19  impairment or combination of impairments significantly limiting her ability to do basic work

20  activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has

21  a "severe" impairment or combination of impairments, the third step requires the Commissioner

22  to determine whether the impairment or combination of impairments meets or equals an

23  impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P,

24  Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the

25  claimant's impairment or combination of impairments does not meet or equal an impairment in the

26  Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient

27  "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the

28

1  claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past

2  relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case

3  of disability is established.  The Commissioner then bears the burden of establishing that the

4  claimant is not disabled, because she can perform other substantial gainful work available in the

5  national economy.   The determination of this issue comprises the fifth and final step in the

6  sequential analysis.  20 C.F.R. § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

7

8  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

9        In this case, at step one, the ALJ determined that plaintiff had not engaged in any

10  substantial gainful activity since the application date, February 4, 2009.  [AR at 35.]  At step two,

11  the ALJ concluded that plaintiff has the following severe impairments: gastrointestinal disorder;

12  renal disorder; and disorder of the endocrine system.  [Id.]  At step three, the ALJ determined that

13  plaintiff's impairments do not meet or medically equal any of the impairments in the Listing.  [Id.]

14  The ALJ further determined that plaintiff retained the residual functional capacity ("RFC")[1] to

15  perform "medium work" as defined in 20 C.F.R. § 416.967(c),[2] except that she "is restricted from

16  extremes of temperature, moisture, fumes or dust particles along with working with heavy and

17  moving machineries."  [Id.]  At step four, the ALJ concluded that plaintiff can perform her past

18  relevant work as a youth advocate.  [AR at 38.]  Accordingly, the ALJ determined that plaintiff has

19  not been under a disability from February 4, 2009, to September 22, 2010, the date of the

20  decision.  [Id.]

21

22  **C.    THE APPEALS COUNCIL'S DECISION**

23        After granting plaintiff's request for review of the ALJ's decision, the Appeals Council

24  adopted the ALJ's findings at steps one, two, and three of the sequential evaluation process,

25  _____

26  [1]    RFC is what a claimant can do despite existing exertional and nonexertional limitations.
    See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

27  [2]    20 C.F.R. § 416.967(c) defines "medium work" as work that involves "lifting no more than 50

28  pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

except that it also found plaintiff's obesity to be a "severe impairment" at step two.  [AR at 9-10.]  The Appeals Council then found that plaintiff retained the RFC to "lift and/or carry 50 pounds occasionally and 25 pounds frequently as well as stand, walk or sit for six hours in an eight-hour workday."  [AR at 9-10.]  It added: "She also was precluded from concentrated exposure to extreme temperatures, moisture, and pulmonary irritants.  Additionally, she was unable to be exposed to unprotected heights or moving machinery.  Furthermore, she was restricted to frequent climbing of ramps and stairs, bending, kneeling, stooping, crawling, and crouching[;] and was limited to occasional climbing of ladders, ropes, and scaffolds."  [AR at 10.]  At step four, the Appeals Council adopted the ALJ's determination that plaintiff can perform her past relevant work as a youth advocate.  [AR at 10-11.]  The Appeals Council therefore concluded that plaintiff was not under a disability from February 4, 2009, to September 22, 2010.  [AR at 10-11.]

## V.

## THE COMMISSIONER'S DECISION

Plaintiff contends that the ALJ: (1) improperly determined that plaintiff's cirrhosis of the liver, hepatitis C, and back pain are non-severe; (2) failed to properly consider plaintiff's obesity at step two and step three of the five-step evaluation process; (3) should have called a vocational expert to testify; and (4) failed to properly evaluate plaintiff's credibility.  [Joint Stipulation ("JS") at 3.]  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

## A.    PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344

(9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In a March 7, 2009, exertion questionnaire, plaintiff stated that she cannot sit or stand for more than twenty-five to thirty minutes without experiencing swelling in her legs and ankles.  [AR at 158-60.]  She also stated that she "grow[s] short of breath just sitting still."  [AR at 158.]  Plaintiff reported that with respect to walking, she grows tired and "worn out" after walking "only a few feet," and that walking fifty feet "leaves[] [her] breathless."  [Id.]  She further reported that she can perform chores for only fifteen minutes at a time because of her shortness of breath and the pain in her "back legs."  [AR at 160.]

At her July 28, 2010, administrative hearing, plaintiff testified that she cannot "sit, stand, lay, walk, do anything for more than 15 to 20 minutes before [she] [has] to get up and change positions or it causes [her] a lot of pain."  She stated that when she last worked, these limitations were causing her to miss work, "so [her employer] chose to lay [her] off."  [AR at 50.]  When counsel asked plaintiff to what condition she attributed these limitations, she testified that she attributed them to her liver problems, as she had been diagnosed with hepatitis C in 2002, which "had advanced to cirrhosis of the liver" by the time she was laid off, and was considered "liver failure"

by the time of the hearing.  [AR at 50-51.]  Plaintiff stated that she has never had Interferon treatments for her liver because when she was initially diagnosed with liver problems in 2002, she was receiving treatment for a substance abuse addiction.  She stated that during her first job after that time -- where she worked for two years -- "[t]hey were running the tests and determining what they wanted to do."  [AR at 53.]  Thereafter, she began working for a non-profit organization that "[did not] offer any medical insurance" [AR 53-54] -- the same job from which she was laid off in 2009.  [AR at 136, 150.]  Plaintiff explained, "So I haven't had medical insurance and any way to get anything done."  [AR at 54.]  Plaintiff testified that at the time of the hearing, she had "MIA insurance" (i.e., medically indigent adult insurance), and as a result was not taking anything for her liver.  She explained that MIA insurance "[does not] do too much for [the] liver," and that she was "awaiting [a] referral[] from MIA to go to ... a hepatitis clinic," but had not yet received that referral.  [AR at 53.]  She also stated that she had been waiting "probably ten weeks" to hear from one treating physician about being put on a list for a liver transplant.  [AR at 55.]  Plaintiff stated that she "need[s] ... medical insurance [so] that [she] can get something done for [her] liver."  [AR at 56-57.]

In addition to her liver problems, plaintiff testified that she has congestive heart failure, which results in her heart "beating really fast for no reason," dizziness, vertigo, and swelling in her legs and feet.  [AR at 55, 57.]  Plaintiff stated that she also has kidney failure and frequent diarrhea, and is not able to sleep through the night.  [AR at 52, 56.]  She stated that she has good periods of anywhere from several days to two weeks, but "then it's like [she] hit[s] a wall and literally, just to get from [her] bed to [her] bathroom, which is just a few feet, it takes every ounce of energy [she has]."  [AR at 52.]  She noted that in May of 2010, she was in a coma and hospitalized for three days, and that she had lost seventy pounds since that hospitalization.  [Id.] Plaintiff testified that she cannot lift more than "maybe five pounds" because anything more than that "would put a real bad strain on [her] back."  [AR at 56.]

In his decision, the ALJ discounted plaintiff's credibility for several reasons.  [See AR at 36-37.]  In requesting review of the ALJ's decision, plaintiff requested that the Appeals Council review,

1  among other issues, the ALJ's evaluation of plaintiff's credibility.  [AR at 187-90.]  Nevertheless,

2  the Appeals Council did not discuss plaintiff's credibility in its decision, nor did it explicitly assign

3  any weight to plaintiff's credibility.  [See AR at 9-11.]  As discussed infra, to the extent that the

4  Appeals Council implicitly adopted the ALJ's findings with respect to plaintiff's credibility, that

5  adoption was improper, as the ALJ's reasons for discounting plaintiff's subjective symptom

6  testimony were not supported by substantial evidence.  Further, to the extent the Appeals Council

7  did not adopt the ALJ's credibility finding, it did not specify what weight it assigned to plaintiff's

8  credibility, and this Court "decline[s] to review the record to ascertain whether substantial evidence

9  might support these findings not made."  See Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995)

10  (quoting Preston v. Heckler, 769 F.2d 988, 990 (4th Cir. 1985)).  Under either scenario, remand

11  is warranted.

12      With respect to the first scenario, the Court notes that at step one of the two-step credibility

13  analysis, the ALJ found that plaintiff's "medically determinable impairment could reasonably be

14  expected to cause the alleged symptoms."  [AR at 37.]  The ALJ nevertheless concluded that

15  plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms

16  are not credible to the extent they are inconsistent with the [ALJ's RFC findings for plaintiff]."  [Id.]

17  Thus, at step two, as the record contains no evidence of malingering by plaintiff,[3] the ALJ was

18  required to offer "specific, clear and convincing reasons" for rejecting her subjective symptom

19  testimony.  See Lingenfelter, 504 F.3d at 1036.  "General findings are insufficient; rather, the ALJ

20  must identify what testimony is not credible and what evidence undermines the claimant's

21  complaints."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at

22  834); see also Dodrill, 12 F.3d at 918.

23      The ALJ rejected plaintiff's subjective symptom testimony because he found that: (1) "her

24  records do not support" her allegation that she is unable to perform work activity; (2) she was

25  "never treated for her diagnosis of hepatitis C although she obviously has access to good medical

26

27      [3]   The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest

28  plaintiff was doing so.

8

1    care," and a treating physician "recommended conservative treatment for [her] condition"; and (3)

2    her "treatment providers have not opined she requires greater work restrictions for a 12 month

3    period."[4]  [AR at 37.]

4         With respect to the first reason, once a claimant has produced objective medical evidence

5    of an impairment or impairments, she "need not produce objective medical evidence of the pain

6    or fatigue itself, or the severity thereof."  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996);

7    see Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("once an impairment is medically

8    established, the ALJ cannot require medical support to prove the severity of the pain").  The case

9    law holding that "[a] claimant need not produce objective medical evidence of the pain or fatigue

10   itself, or the severity thereof," reflects the rationale that "pain testimony may establish greater

11   limitations than can medical evidence alone." Smolen, 80 F.3d at 1282 (internal citations omitted);

12   Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Social Security Ruling[5] 96-7p).  The

13   Ninth Circuit has noted that "the nature of pain and other such symptoms" is "highly subjective and

14   idiosyncratic" such that "[t]he amount of pain [or fatigue] caused by a given physical impairment

15   can vary greatly from individual to individual." Smolen, 80 F.3d at 1282 (internal citations omitted).

16   Thus, while an ALJ may consider whether a lack of objective medical evidence supports the

17   degree of limitation, this "cannot form the sole basis for discounting pain testimony." Burch, 400

18   F.3d at 681.  Accordingly, even if the ALJ's characterization of the medical evidence were

19   supported by substantial evidence, he can only rely upon this rationale to discount plaintiff's

20

21

---

22        [4]    While the ALJ also stated that plaintiff's "records do not establish an inability to perform

23   work activity for any twelve month period of time," the ALJ did not identify any gap in plaintiff's
     medical records, or state that her records established an inability to work for a period of *less* than

24   twelve months.  Thus, it does not appear from the ALJ's decision that he rejected her subjective
     symptom testimony on the principal basis that her records did not support the *duration* of her

25   alleged disability.

26        [5]    Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they

27   "constitute Social Security Administration interpretations of the statute it administers and of its
     own regulations," and are given deference "unless they are plainly erroneous or inconsistent with

28   the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    subjective symptom testimony if either of his other reasons are proper.  As discussed infra, they

2    are not.

3         Second, it appears that the ALJ rejected plaintiff's pain testimony because she was "never

4    treated for her diagnosis of hepatitis C although she obviously has access to good medical care,"

5    and because during a hospitalization in April, 2010, a treating physician -- Dr. Menon A.

6    Moothedath -- "recommended conservative treatment for [plaintiff's] condition." [AR at 37.] Neither

7    of these statements by the ALJ is a convincing reason to discount plaintiff's credibility on the basis

8    of conservative treatment, however.

9         With respect to her hepatitis C, plaintiff testified that she has not received treatment

10   because she has only had medical insurance that would provide such treatment during her first

11   job -- which she held from December 2003 to December 2005 [AR at 136] -- and during that period

12   the doctors "were running the tests and determining what they wanted to do."  She further testified

13   that from December 2005 to January 2009 -- i.e., during her second job -- she did not have

14   medical insurance at all.  Finally, although at the time of the hearing she had what she referred

15   to as "MIA insurance," she also stated that that coverage had not "do[ne] too much" for her liver.

16   She testified that as of the time of the hearing, she was awaiting referral to a hepatitis clinic, as

17   well as possible placement on an eligibility list to receive a liver transplant.  The ALJ did not

18   acknowledge any of this testimony in concluding that plaintiff was "never treated for her diagnosis

19   of hepatitis C although she obviously has access to good medical care."  Thus, that statement by

20   the ALJ was a mischaracterization of the evidence contained in the record concerning plaintiff's

21   treatment for her hepatitis C, which was error.  See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th

22   Cir. 1984)  (error for an ALJ to ignore or misstate the competent evidence in the record in order

23   to justify her conclusion); see also Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to

24   develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the

25   testimony and reports"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not

26   permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence").

27

28

1    With respect to Dr. Moothedath's recommendation, that doctor examined plaintiff on April

2    26, 2010, and found that she had end-stage liver disease as well as "[c]oagulopathy, with

3    decreased platelets and abnormal coagulation, could be the factor for the perinephric hematoma,

4    which may have to be corrected." [AR at 433-34.]  Dr. Moothedath recommended "[c]onservative

5    treatment for the hematoma," and also stated that he would "recommend transfer to a referral

6    center for transplant, even though [plaintiff] is an unlikely candidate" because of her history of

7    substance abuse.  He concluded his recommendations by stating that plaintiff's "overall prognosis

8    [was] guarded" and that he "[would] recommend conservative treatment and see the response."

9    [AR at 434.]  While it is not clear from this last statement for *which* condition or conditions Dr.

10   Moothedath stated he was recommending conservative treatment, he characterized plaintiff's liver

11   disease as "end-stage," and did not discuss any treatment options other than a possible liver

12   transplant.  Thus, from the context of Dr. Moothedath's overall statements, it does not appear that

13   he found only "conservative treatment" appropriate for plaintiff's liver problems.  Indeed, he found

14   that a transplant may have been warranted.

15   As to his third reason to discount plaintiff's credibility, the ALJ stated that her "treatment

16   providers have not opined she requires greater work restrictions for a 12 month period."  [AR at

17   37.]  However, neither did any of plaintiff's treatment providers opine that she does *not* require

18   greater work restrictions than those in the ALJ's RFC determination.  The Court does not find the

19   fact that there is no treating opinion in the record setting forth more limited work restrictions than

20   those in the RFC -- when the record does not contain *any* treating opinion concerning plaintiff's

21   limitations -- to be a convincing reason to discredit plaintiff's pain testimony.  See Lingenfelter, 504

22   F.3d at 1036.  Moreover, the Court notes that the majority of plaintiff's treatment history in the

23   Administrative Record consists of records from her visits to the emergency room [see, e.g., AR

24   at 223-24, 237-38, 243-46, 319, 369-71, 400-05, 434], and the ALJ does not explain why he would

25   expect plaintiff's emergency treatment records to reflect any long-term work restriction opinions.

26   The ALJ failed to offer any legally adequate reasons for discounting plaintiff's credibility.

27   Accordingly, whether the Appeals Council adopted the ALJ's credibility finding or was silent on the

28

1    issue of what weight is due plaintiff's subjective symptom testimony, remand is warranted on this

2    issue.

3

4    **B.    PLAINTIFF'S OBESITY AT STEP TWO AND STEP THREE**

5        Next, plaintiff asserts that "the ALJ failed to determine that plaintiff's obesity was a severe

6    impairment[,] nor did he properly determine the effect of [] plaintiff's obesity upon her other

7    impairments, ability to work, and general health." [JS at 8-12.]

8        A "severe" impairment, or combination of impairments, is defined as one that significantly

9    limits physical or mental ability to do basic work activities. 20 C.F.R. § 416.920. "The Supreme

10   Court has recognized that including a severity inquiry at the second stage of the evaluation

11   process permits the [Commissioner] to identify efficiently those claimants whose impairments are

12   so slight that they are unlikely to be found disabled even if the individual's age, education, and

13   experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen

14   v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)).  However, an overly

15   stringent application of the severity requirement would violate the statute by denying benefits to

16   claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Bowen

17   v. Yuckert, 482 U.S. at 156-58).  Despite use of the term "severe," most circuits, including the

18   Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of

19   groundless claims." Smolen, 80 F.3d at 1290 (citing Bowen v. Yuckert, 482 U.S. at 153-54); see

20   Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("[a] claimant's showing at level two that

21   he or she has a severe impairment has been described as 'de minimis'"); see also Hudson v.

22   Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is

23   no more than minimal effect on ability to work).

24       An impairment or combination of impairments should be found to be "non-severe" only

25   when the evidence establishes merely a slight abnormality that has no more than a minimal effect

26   on an individual's physical or mental ability to do basic work activities. See Corrao, 20 F.3d at

27   949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also 20 C.F.R. §

28

1   416.921(a).  "Basic work activities" mean the abilities and aptitudes necessary to do most jobs,

2   including "physical functions ...," "[u]nderstanding, carrying out, and remembering simple

3   instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual

4   work situations," and "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.921(b).

5          In determining a claimant's disability status, an ALJ has the responsibility to determine the

6   claimant's RFC after considering "all of the relevant medical and other evidence" in the record.

7   20 C.F.R. §§ 416.945(a)(3), 416.946(c).  Thus, at step three, "an RFC that fails to take into

8   account a claimant's limitations is defective."  Valentine v. Comm'r of Social Sec. Admin., 574 F.3d

9   685, 690 (9th Cir. 2009).

10         Defendant contends that "there is no cause for remand" on this issue because the Appeals

11  Council's decision is the final decision of the Commissioner, and the Appeals Council found

12  plaintiff's obesity to be a severe impairment at step two and limited her RFC accordingly at step

13  three.  [JS at 12-13.]  The Court agrees.  20 C.F.R. § 422.210(a) states that: "A claimant may

14  obtain judicial review of a decision by an administrative law judge if the Appeals Council has

15  denied the claimant's request for review, or of a decision by the Appeals Council when that is the

16  final decision of the Commissioner."  Here, the Appeals Council granted plaintiff's request for

17  review and issued its own decision, and thus the Court reviews the Appeals Council's decision as

18  the final decision of the Commissioner.[6]  Further, as defendant points out, the Appeals Council

19  found that plaintiff's obesity is a severe impairment and also rendered an RFC determination that

20  is more restrictive than the ALJ's RFC determination.  [Compare AR at 9-10 with AR at 35.]  The

21  Appeals Council stated that in reaching its conclusion concerning plaintiff's RFC, it had

22  "considered the combined effects of [plaintiff's] obesity on her other impairments in accordance

23  with SSR 02-1p."  [AR at 10.]  As plaintiff does not challenge the obesity findings of the *Appeals*

24  *Council* at steps two and three, and as the Appeals Council found plaintiff's obesity to be "severe"

25

26  _____

27       [6]   For this reason, to the extent plaintiff argues that the *ALJ* erred by making certain findings,
    the Court herein only addresses plaintiff's arguments to the extent that the Appeals Council
28  adopted or did not explicitly disagree with any of those findings of the ALJ.

1   and considered its effects in rendering an RFC determination, remand is not warranted on

2   plaintiff's second contention of error.[7]

3

4   **C.   PLAINTIFF'S OTHER STEP TWO CONTENTIONS**

5        In her first contention of error, plaintiff asserts that the ALJ erred in concluding that certain

6   other of her alleged impairments were not severe impairments at step two.

7        *1.   Hepatitis C and Cirrhosis of the Liver*

8        Plaintiff argues that the ALJ improperly concluded that her hepatitis C and cirrhosis of the

9   liver are not severe impairments.  [JS at 3-6.]  The Appeals Council likewise found that plaintiff's

10   hepatitis C and cirrhosis of the liver are not severe impairments at step two.  [AR at 9-10.]

11        In determining plaintiff's RFC, the Appeals Council stated that it was "persuaded by the

12   physical and neurological examinations" of examining physician Bryan To, "as well as the opinions

13   of Dr. To, [nonexamining physician] F. Kalmar [] and [nonexamining physician] J. Ross []."  [AR

14   at 10 (citing AR at 192-205, 217-18).]  All three of these physicians either diagnosed plaintiff with

15   hepatitis C and cirrhosis of the liver, or acknowledged treating medical records reflecting these

16   diagnoses.  [See AR at 195, 204, 218.]  CT scans and ultrasounds on various occasions in 2009

17   and 2010 revealed cirrhosis of the liver.   [See AR at 242, 251, 335, 343, 356, 392-93, 425.]

18   Further, plaintiff was consistently and frequently diagnosed with both hepatitis C and cirrhosis of

19   the liver.  [See, e.g., AR at 209-11, 216, 221, 223-24, 237-38, 243-46, 327, 369-71, 402-05, 434,

20   436.]

21        Moreover, as noted supra, plaintiff testified that due to her liver problems, she cannot "sit,

22   stand, lay, walk, do anything for more than 15 to 20 minutes before [she] [has] to get up and

23   change positions or it causes [her] a lot of pain."  [AR at 50-51.]  While it does not appear that

24   plaintiff is in a position to definitively attribute these functional limitations to her liver problems, at

25   least a few of her medical records may support her testimony.  [See AR at 209, 223-24.]  Thus,

26

27        [7]   The Court does not hereby affirm the Appeals Council's RFC determination, since the

28   issues for which the Court remands this case (supra and infra) may impact on that determination.

as discussed herein, to the extent the Appeals Council implicitly adopted the ALJ's legally inadequate findings concerning plaintiff's credibility, the Appeals Council's conclusion -- that plaintiff's hepatitis C and cirrhosis of the liver have no more than a minimal effect on her physical ability to do basic work activities -- may not be supported by substantial evidence.  On the other hand, to the extent the Appeals Council did not adopt the ALJ's credibility finding, the Court is unable to review whether the Appeals Council properly found plaintiff's hepatitis C and cirrhosis of the liver non-severe in light of the medical evidence in the record and plaintiff's testimony that her liver disease prevents her from sitting, standing, laying, or walking for more than fifteen to twenty minutes at a time.  See Byrnes, 60 F.3d at 641.  Thus, remand is warranted on this portion of plaintiff's first contention of error.

    *2.*    *Back Pain*

       Plaintiff also argues that the ALJ erred in concluding that plaintiff's back pain is not a severe impairment.  [JS at 5-6.]  Like the ALJ, the Appeals Council found at step two that plaintiff's back pain was not a severe impairment.  [AR at 9-10.]

       The record reflects the following evidence of plaintiff's back problems: a February 2, 2009, x-ray revealed "[d]egenerative change of the spine" [AR at 276]; plaintiff went to the emergency room on April 1, 2010, complaining of lower back pain and was diagnosed with "[l]ow [b]ack [p]ain" and prescribed medications [AR at 400-01]; the next day, she visited the emergency room again, still complaining of lower back pain -- but this time with pain "radiating down [her left] leg" -- and was diagnosed with lumbago and sciatica [AR at 319, 324]; and two CT scans taken on May 21, 2010, and May 26, 2010, revealed "degenerative change in the spine."  [AR at 343, 356.]

       Plaintiff testified at the administrative hearing that she cannot lift more than "maybe five pounds" because anything more than that "would put a real bad strain on [her] back."  Accordingly, for the same reasons remand is warranted for the Appeals Council to reconsider whether

/

/

/

1  plaintiff's hepatitis C and cirrhosis of the liver are severe, remand is warranted for this portion of

2  plaintiff's first contention of error.[8]  See Byrnes, 60 F.3d at 641.

3

4  **VI.**

5  **REMAND FOR FURTHER PROCEEDINGS**

6      As a general rule, remand is warranted where additional administrative proceedings could

7  remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

8  Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

9  In this case, remand is appropriate for the ALJ to properly evaluate plaintiff's credibility and

10  whether her impairments of hepatitis C, cirrhosis of the liver, and back pain are "severe."

11      Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

12  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

13  for further proceedings consistent with this Memorandum Opinion.

14      **This Memorandum Opinion and Order is not intended for publication, nor is it**

15  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

16

17  DATED: August 7, 2013

                            _Paul L. Abrams_

18                              PAUL L. ABRAMS
                   UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27      [8]    In light of the remand of this action, the Court exercises its discretion not to address plaintiff's

28  third contention of error.